# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | | |
|---|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. _____ |
| GSC STEEL STAMPING, LLC, | ) ) | |
| Defendant. | ) ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Volkswagen Group of America, Inc. ("VW" or "Volkswagen")[1], states as follows for its Verified Complaint against Defendant GSC Steel Stamping, LLC ("GSC"):

## PARTIES, JURISDICTION AND VENUE

1. VW is a privately held corporation in New Jersey with a principal place of business in Reston, Virginia. Accordingly, VW is a citizen of both New Jersey and Virginia.

2. GSC is, upon information and belief, a Georgia limited liability corporation with a principal place of business at 5286 Circle Drive, Lake City, Georgia. GSC may be served with process on its Registered Agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092 or to its CEO, Mr. Vince Henderson, at 5286 Circle Drive, Lake City, Georgia 30260.

---

[1] The contracts at issue were originally with Volkswagen Group of America Chattanooga Operations, LLC. That entity merged with Volkswagen Group of America, Inc. on January 1, 2024. This Complaint refers to Volkswagen Group of America, Inc. as that is now the party in interest to the relevant contracts.

3. Venue and jurisdiction are proper in this District, because GSC has anticipatorily breached a contract that provides for the United States District Court for the Eastern District of Tennessee to be the exclusive venue and jurisdiction of any action seeking equitable relief.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because: (1) there is complete diversity between VW and GSC; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

## STATEMENT OF FACTS

**A.  The Parties and the Contract**

5. GSC is the successor entity to Dixien by nature of an asset purchase agreement executed in or around July 1, 2023.  GSC confirmed in writing to VW that it had assumed Dixien's contracts with VW as part of that asset purchase.  For simplicity, because GSC is the current entity obligated to supply parts to VW, this Complaint refers only to GSC.

6. Volkswagen, as buyer, and GSC, as supplier, are parties to electronic Nomination Agreements ("Nomination Agreements") dated September 3, 2020 and September 17, 2020 for the supply of various stamped metal parts, which are automotive component parts (hereinafter the "Parts" or "stamped metal parts").  The Nomination Agreements are attached as **Exhibit A**.

7. The Nomination Agreements are between VW and GSC, and are valid and enforceable contracts for the production and supply of various stamped metal parts and other Parts.

8. The Nomination Agreements incorporate by reference the Volkswagen Group of America, Inc.'s Production Terms and Conditions of Purchase (the "Terms and Conditions"), which are attached as **Exhibit B**.[2]

---

[2] *See* Nomination Agreements, **Exhibit A**. The Terms and Conditions of the Nomination Agreements allow VW to revise them from time to time, which it recently did on July 30, 2024.

9. Volkswagen and GSC have entered into a series of purchase orders, all of which explicitly state that they are governed by and subject to the Nomination Agreement and the Terms and Conditions. The Nomination Agreements, the Terms and Conditions, and the most recent purchase order at issue here (attached as **Exhibit C**) will hereinafter collectively be referred to as the "Contract".

B. **Relevant Terms under the Contract**

10. GSC supplies Volkswagen with stamped metal parts for use in assembly of the Volkswagen Atlas, the Atlas Cross Sport, and the ID.4 electric vehicle. Pursuant to the Nomination Agreements, GSC's obligations include the development, manufacture and delivery of stamped metal parts as required by Volkswagen. (**Ex. A**).

11. The Terms and Conditions state that "Seller may not suspend performance of the Order or terminate the Order for any reason." (**Ex. B**, Terms and Conditions § 20). In addition, "Seller agrees to 100% on-time delivery of the quantities and at the times specified by Buyer . . .". (*Id.* § 4).

12. The Terms and Conditions further state that, "In connection with . . . Buyer's decision to change to an alternate source of Supplies, Seller shall cooperate in the transition of supply, including the following . . .when requested by Buyer, will return to Buyer all Buyer's Property in as good condition as when received by Seller." (Ex. B, Terms and Conditions § 22).

13. In addition, the Terms and Conditions state "All information and materials, including without limitation, Tooling . . . and other materials and items . . . furnished by Buyer

---

Therefore, the Terms and Conditions as revised on July 30, 2024, govern the Nomination Agreements. Notably, the relevant terms quoted herein have not changed since Dixien contracted with Volkswagen or since GSC assumed those contracts. *See* **Ex. B**, Terms and Conditions, ¶ 42.

either directly or indirectly to Seller to perform the Order . . . shall be and remain the sole and exclusive property of Buyer . . . . Effective immediately upon written notice to Seller, without further notice or legal action, Buyer has the right to enter the premises of Seller and take possession of all of Buyer's Property without payment of any kind." (Ex. B, Terms and Conditions § 25).

14. The Terms and Conditions state, "All of Buyer's Tooling, whether in Seller's possession or the possession of a sub-supplier or subcontractor of Seller, shall become and remains the property of and owned by Buyer in accordance with the passing of title as set forth herein. Seller shall permanently mark all such Tooling as Buyer's property by using asset tags or similar identifying materials." (Ex. B, Terms and Conditions § 28).

15. The Terms and Conditions further provide that "either party may, with respect to a Claim, apply to a court for equitable relief, including a temporary restraining order, preliminary injunction or other interlocutory or relief[.]" (**Ex. B**, Terms and Conditions § 38.1(f)). Additionally, the Terms and Conditions state that "[a]ny court relief sought under this Section shall be brought in and subject to the exclusive venue and jurisdiction of the courts of Hamilton County, Tennessee or the U.S. District Court for the Eastern District of Tennessee, as applicable[.]" (*Id.*)

16. Recognizing the nature of the automotive industry and the critical need for timely deliveries and uninterrupted supply (because Volkswagen does not manufacture these specially-made Parts), Volkswagen and GSC have also agreed that money damages would not be an adequate remedy to Volkswagen if GSC fails to comply with the Contract. Notably, Section 15 of the Terms and Conditions provides:

> In any action brought by Buyer to enforce Seller's obligations in connection with the production or delivery of Supplies or transition

Case 1:25-cv-00160-TRM-CHS   Document 1   Filed 05/15/25   Page 4 of 10   PageID #: 4

4

> support . . . Seller acknowledges and agrees that monetary
> damages are not a sufficient remedy for any actual, anticipatory or
> threatened breach of the Order and that, in addition to all other
> rights and remedies that Buyer may have, Buyer shall be entitled to
> specific performance and injunctive equitable relief as a remedy
> for any such breach, plus Buyer's reasonable attorneys' fees.

(**Ex. B**, Terms and Conditions § 15).

C.    **GSC's Anticipatory Breach of the Contract**

17.    On March 25, 2025, GSC notified VW that unless it agreed to price increases ranging from, for most parts, 600% to 2,000%, GSC would immediately stop shipping Parts to VW.

18.    VW provided notice to GSC per the Contract that GSC needed to provide adequate assurances of delivery of the Parts so that production could continue. *See* March 25, 2025 letter attached as **Exhibit D**.

19.    Although GSC threatened to suspend shipments, VW continued to negotiate a resolution in good faith.

20.    The exit agreement proposed by GSC was commercially unreasonable, essentially eviscerating the Nomination Agreements and Terms and Conditions to which GSC had agreed to be bound. Among other things, the proposed exit agreement guaranteed volumes of sales to VW, increased the price by, in some cases 7500%, and disclaimed all GSC warranties as to the condition or merchantability of parts and required VW to hold GSC harmless if it did not produce the total parts agreed to therein. *See* Proposed Exit Agreement, attached as **Exhibit E.**

21.    On April 13, 2025, GSC confirmed that it would refuse to ship any further parts unless VW signed the unreasonable exit agreement. *See* Email from GSC to VW, attached as **Exhibit F.** On April 14, 2025, GSC stated that its final shipment would be April 16, 2025, and stated that Volkswagen "would suffer" if it did not sign the exit agreement.

22. Although Volkswagen has averted a plant shutdown to date, GSC's continual threats and unrealistic demands have forced Volkswagen to identify a new supplier. However, GSC is now refusing to allow VW to access VW-owned tools, dies, inventory, and supplies (including but not limited to: VW owned steel and returnable packaging) all of which are kept at GSC's premises. A list of the VW-owned tooling assets and supplies, each marked in one way or another as being owned by Volkswagen, in GSC's possession is attached as **Exhibit G**, and a copy of the email confirming GSC's refusal to allow VW access to its tools is attached as **Exhibit H.**

**D.     The Anticipatory Breach Requires Injunctive Relief.**

23. GSC's failure to provide adequate assurances that it will allow VW to access and reclaim its assets requires injunctive relief. Volkswagen's supply chain requires timely delivery of all component parts, otherwise the entire supply chain shuts down, stopping assembly at Volkswagen. Volkswagen utilizes a timely delivery model, which is standard in the automotive industry and means that Volkswagen does not keep a sufficient inventory of excess parts to continue manufacturing vehicles if a supplier stops supplying parts.

24. The Parts that GSC manufactures are unique components, automotive parts that must meet demanding engineering specifications and require extensive certification and validation for production, and GSC is the sole source of the VW-owned tooling needed to manufacture the Parts. Volkswagen cannot readily obtain replacement parts from another supplier without first obtaining and transferring the VW-owned tooling, nor can it manufacture them internally. GSC is aware Volkswagen has no ready replacement source of supply for these products.

25. Any delay in the delivery of these Parts will lead to a shutdown of Volkswagen's assembly process. In fact, it would take Volkswagen thirty weeks to build new dies for the specialized tooling, and then additional testing would be required before the tool could be used.

26. GSC is aware that VW needs its tooling and other assets to find a replacement source of supply for the Parts, and that its refusal to allow VW to reclaim its assets will cause catastrophic and immeasurable harm to Volkswagen.

27. Such catastrophic and immeasurable harm will include, but is not limited to, Volkswagen stopping anticipated assembly of **all** of the vehicles it manufactures in Chattanooga—the Atlas, the Atlas Cross Sport, and the ID.4 electric vehicles - and delaying the launch of Volkswagen's updated vehicles, sending up to 3,000 Volkswagen workers home without pay, and causing unavailability of vehicles on the market. The shutdown of Volkswagen's manufacturing would also lead to all of its suppliers, located in Tennessee, Georgia, and throughout the world, to similarly shut down their manufacturing processes on any Volkswagen parts (if no production is taking place in Chattanooga then no parts will be ordered or needed).

28. Volkswagen is left with no recourse but to seek immediate relief from this Court to avoid irreparable harm.

## CAUSES OF ACTION

### COUNT 1 – BREACH OF CONTRACT/ANTICIPATORY BREACH OF THE CONTRACT

29. Volkswagen incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

30. Volkswagen and GSC have a valid and binding agreement that requires GSC to allow Volkswagen to access and reclaim all Volkswagen-owned assets located on GSC premises. GSC is bound by the obligations set forth in the Contract.

31. Volkswagen has fulfilled all of its contractual obligations under the Contract.

32. GSC's communicated intent to refuse to allow Volkswagen to access and reclaim its premises constitutes a material breach of the Contract by anticipatory repudiation.

33. If GSC does not allow Volkswagen to access and reclaim its property, Volkswagen will be unable to fulfill its assembly obligations, which will force Volkswagen to delay resuming its production lines, resulting in idle assembly operations, and potentially significant layoffs. Volkswagen will suffer substantial damages which, at this time, are not feasible to reasonably calculate, but at a minimum would be equal to the resulting cost associated with a continued shutdown, as well as loss of Volkswagen's current trained work force, damage to Volkswagen's business goodwill, and Volkswagen's reputation in the automotive industry as a whole.

34. Given the magnitude and incalculability of such damages, monetary relief will not provide Volkswagen with an adequate remedy. However, to the extent the Court awards monetary relief to Volkswagen, GSC will remain responsible for all monetary damages associated with VW's inability to resume production caused by GSC's material breach of the Contract.

35. If GSC does not perform its contractual obligations, Volkswagen will have no adequate remedy at law for the harm caused by such breach, and GSC and Volkswagen agreed that Volkswagen would be entitled to injunctive relief in such circumstances. (**Ex. B**, Terms and Conditions § 15).

## PRAYER FOR RELIEF

WHEREFORE, Volkswagen prays as follows:

A. For process to issue and be served on Defendant, requiring it to answer the allegations in the Complaint;

B. For a mandatory injunction requiring GSC to allow Volkswagen access to and to reclaim Volkswagen-owned inventory, tools, dies, and supplies on GSC premises;

C. For injunctive relief prohibiting GSC from destroying, defacing, or altering Volkswagen-owned inventory, tools, dies, and supplies on GSC premises;

D. For an award of reasonable attorneys' fees and costs arising out of GSC's failure to perform under the Contract and for filing this Complaint as provided for by the Terms; and

E. For all other relief as the Court may deem just, equitable or appropriate under the circumstances.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: /s/*Timothy M. Gibbons*
    Timothy M. Gibbons, BPR# 014860
    Cathy S. Dorvil, BPR# 034060
    Logan C. Threadgill, BPR # 034470
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
Telephone: (423) 756-3000
Facsimile: (423) 265-9574
Email: tgibbons@chamblisslaw.com
       cdorvil@chamblisslaw.com
       lthreadgill@chamblisslaw.com
*Counsel for Volkswagen Group of America Chattanooga Operations, LLC*

# VERIFICATION

I, John B. Critchfield, declare as follows:

I am Senior Counsel of Volkswagen Group of America, Inc. ("VW"). I have reviewed the foregoing Verified Complaint for Injunctive Relief and Damages. Except as to those matters alleged on information and belief, I verify that the facts set forth above are true and correct based upon my information, personal knowledge and belief, including information gathered from Volkswagen's documents that were prepared and maintained in the ordinary course of the company's business and/or Volkswagen's employees who have personal knowledge of the facts asserted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 14th day of May, 2025, at Hamilton County, Tennessee.

STATE OF TENNESSEE:
COUNTY OF HAMILTON:

SWORN TO AND SUBSCRIBED before me this 14 day of May, 2025.

_____
NOTARY PUBLIC

My commission expires: 4/12/2026

OFFICIAL SEAL:



10